IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TJF Associates, LLC | : | |
|     Plaintiff | : | Civil Action |
| | : | No. 05-705 |
| v. | : | |
| | : | |
| Kenneth J. Rotman & Allianex, LLC | : | |
|     Defendants | : | |

**Memorandum and Order**

Yohn, J.                                                                                                                                                                                                                                                                                                                              June ____, 2005

      Presently before the court is defendants' motion to dismiss the complaint, pursuant to Federal Rule of Civil Procedure 12(b), for lack of personal jurisdiction, Fed. R. Civ. P. 12(b)(2); improper venue, Fed. R. Civ. P. 12(b)(3); and insufficiency of service of process, Fed. R. Civ. P. 12(b)(5). Defendants also move to dismiss on the basis of the doctrine of *forum non conveniens*. In the alternative, defendants ask that the case be transferred to the United States District Court for the Central District of California, pursuant to 28 U.S.C. § 1404(a). In addition, defendants have filed a motion to strike Paragraph 49 of the complaint, pursuant to Federal Rule of Civil Procedure 12(f), on the ground that it contains scandalous or impertinent matter.

      For the reasons stated herein, defendants' motion to dismiss will be granted on the ground that venue is improper in this judicial district. Given that venue is improper, I will not decide defendants' motion to strike.

**I. Factual Background and Procedural History**

      The following facts are either undisputed or taken from plaintiff's account of events.

1

Plaintiff TJF Associates, LLC ("TJF") is a Delaware limited liability corporation now registered to conduct business in Pennsylvania. Its principal place of business is located in Blue Bell, Montgomery County, Pennsylvania, where it has operated since July 2004. TJF has three members: John Musci, Tom Wynne, and Frank Scardino. Musci, the company's CEO, is an Ohio citizen. Wynne and Scardino are both Pennsylvania citizens. Defendant Kenneth J. Rotman is a citizen of California. Defendant Allianex, LLC ("Allianex") is a California limited liability corporation owned and operated by Rotman. Both TJF and Allianex are in the burgeoning business of marketing and distributing Voice Over Internet Protocol ("VoIP") telecommunications services to consumers. This case, over which the court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332, arises from failed business negotiations that were intended to have culminated in Rotman's becoming a full partner in TJF and in Allianex's becoming an agent for the sale of TJF's VoIP services.

The members of TJF first became acquainted with Rotman in August 2004 at an industry conference in Chicago. Rotman was a speaker at a panel discussion attended by Scardino and Musci. After Rotman's presentation, Scardino and Musci introduced themselves to Rotman, and the three discussed the presentation and the parties' common business interests. The parties exchanged business cards, and, soon after, they opened negotiations over a possible business partnership. Rotman, Scardino, Musci, and Wynne participated in an active e-mail and telephone correspondence between September 2004 and January 2005. The phone calls, of which there were upwards of two dozen,[1] totaling between fifteen and twenty hours, were placed to a toll-free

---

[1]According to the complaint, Rotman "placed approximately fifty telephone calls to TJF in Blue Bell." According to plaintiff's brief in opposition to defendant's motion, Rotman "participated in dozens of telephone calls." According to Frank Scardino's declaration, Rotman

2

number that connected to plaintiff's office in Blue Bell, where Scardino worked on a daily basis. The e-mail messages, which were retrieved and read (and many of which were composed) by Scardino in Pennsylvania and Musci in Ohio, numbered in the hundreds.[2] The parties also had face-to-face meetings in California, Illinois, and Florida. They never met in Pennsylvania.

In September 2004, shortly after the parties opened negotiations, they executed a general "Mutual Non-disclosure Agreement" ("the Agreement"), which was signed by Scardino on behalf of TJF and Rotman on behalf of Allianex. The agreement, which was to expire three years from the effective date, expressly identified "Blue Bell, PA" as the location of TJF's principal place of business. As the negotiations matured, Rotman drafted a "Confidentiality and Non-Circumvention Agreement," which he sent to Scardino in Pennsylvania, but which was apparently never executed.

Plaintiff initiated suit in this court on February 15, 2005, alleging that Rotman had breached the Agreement by disclosing to third parties proprietary information concerning TJF's business relationship with a company called 8x8 or Packet 8. TJF has a contract with Packet 8 to provide both the hardware and the software for the VoIP services it sells. The contract contains confidential terms relating to TJF's pricing strategy and to the incentives TJF receives from Packet 8 for selling its capacity. These terms give TJF a competitive advantage in the marketplace for VoIP telephony. The terms, to which plaintiff refers as the "pricing term" and the "award term," were disclosed to Rotman in the course of his negotiations with TJF and were

---

"placed approximately thirty or so telephone calls to [him] in Blue Bell."

[2]Scardino avers in his declaration that he has been able to recover sixty-one of these messages.

known by Rotman at the time of their alleged disclosure to be confidential information covered by the Agreement. The alleged improper disclosures occurred in California, where Rotman was negotiating with several third-party telecommunications firms on behalf of TJF.

In addition to breach of contract, the complaint alleges breach of fiduciary duty, misappropriation of trade secrets, and fraud–all arising from Rotman's alleged disclosure in California of the pricing term and the award term. Plaintiff seeks damages and equitable relief in the form of a permanent injunction barring defendants' future disclosure of proprietary information protected by the Agreement. On February 22, plaintiff filed a motion in this court for a temporary restraining order to compel defendants' compliance with the Agreement. After hearing the parties' arguments, I granted the TRO on March 7, without prejudice to defendants' right to contest personal jurisdiction and venue. Plaintiff filed the instant motion on March 14. On March 23, the parties entered into a stipulation whereby the TRO was dissolved, plaintiff withdrew its motion for a preliminary injunction, and defendants agreed not to disclose the price term or the award term to any other third party absent the entry of a protective order.

**II. Discussion**

    **A. Sufficiency of Service of Process**

Defendants have moved to dismiss the complaint as to defendant Rotman on the ground that he did not waive personal service and was not properly served pursuant to Federal Rule of Civil Procedure 4(e), which sets out the requirements for service when a waiver is not obtained. Rule 4(e) provides that service of process may be made upon an individual from whom a waiver has not been obtained

> by delivering a copy of the summons and of the complaint to the individual

>personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. (4)(e)(2).

Prior to the filing of defendants' motion, Rotman had not been personally served in compliance with Rule 4(e)(2); the complaint, by plaintiff's own admission, had simply been left at Rotman's door. However, an entry on the case docket dated May 27, 2005 reflects that personal service was effected upon Rotman on May 24. Defendants' Rule 12(b)(5) argument now appears moot, so it cannot serve as a basis for dismissal of the complaint.

**B. Personal Jurisdiction**

When a defendant moves to dismiss on the ground that the court lacks personal jurisdiction over the defendant, the burden falls on the plaintiff to come forward with sufficient facts to establish that jurisdiction is proper. *Mellon Bank (East) PSFS, National Assoc. v. Kenneth*, 960 F.2d 1217, 1223 (3d Cir. 1992). In deciding a motion to dismiss under Rule 12(b)(2), the court must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff.[3] *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002).

Rule 4(e) of the Federal Rules of Civil Procedure permits a district court to exercise personal jurisdiction over a nonresident to the extent permitted under the law of the state in which the district court sits. *See* Fed. R. Civ. P. 4(e). Because this court sits in Pennsylvania, the scope of its personal jurisdiction over a nonresident defendant is defined by Pennsylvania's Long

---

[3] Defendants, in their brief, dispute certain facts alleged by plaintiff, including the number of phone calls and e-mail messages that TJF and Rotman exchanged during the course of their negotiations. At this stage in the litigation, all factual disputes must be resolved in favor of TJF.

Arm Statute, 42 Pa. Stat. Ann. § 5322(b) (Purdon 1981), which provides that a Pennsylvania court may exercise jurisdiction over a person to the constitutional limits of the due process clause of the Fourteenth Amendment. *See Mellon Bank (East) PSFS National Assoc.*, 960 F.2d at 1221; *Time Share Vacation v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir. 1984).

Under the due process clause, a court may not exercise personal jurisdiction over a nonresident defendant unless there are sufficient minimum contacts between the defendant and the forum state to justify hailing the defendant into the forum. *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286 (1980). To satisfy the requirement of minimum contacts, it is necessary for the defendant to have purposefully availed itself of the privilege of acting within the forum state, thus invoking the benefits and protections of the forum state's laws. *Hanson v. Denkla*, 357 U.S. 235, 253 (1958).

Once it is established that the defendant purposefully availed itself of the privilege of acting within the forum state, the court may exercise jurisdiction over the defendant so long as doing so comports with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). To defeat jurisdiction based on fairness, a defendant must establish that it would be unreasonable to require it to defend in the forum. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) (citing *Burger King Corp. V. Rudzewicz*, 471 U.S. 462 (1985)). Factors to be considered in assessing reasonableness are "the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. *Id.* (quoting *Burger King*, 471 U.S. at 477).

In cases in which the defendant's contacts with the forum state are "continuous and systematic," the defendant is subject to general jurisdiction in that forum, meaning that the defendant may be called into the forum to answer any claim against it. *See Pinker,* 292 F.3d at 368 n.1. TJF does not argue that Rotman and Allianex's contacts with Pennsylvania are sufficient to subject them to general jurisdiction in the Commonwealth. Plaintiff argues instead that defendants are subject to specific personal jurisdiction, which arises when the "claim is related to or arises out of the defendant's contacts with the forum." *See Mellon Bank (East) PSFS National Assoc.*, 960 F.2d at 1221. Defendants argue that neither general nor specific personal jurisdiction lies.

Plaintiff offers the following facts in support of its argument that this court may exercise specific personal jurisdiction over defendants in this case: Rotman directed numerous telephone calls and e-mail messages into Pennsylvania during the course of his partnership negotiations with TJF; the Agreement was executed during the course of Rotman's partnership negotiations with TJF; the Agreement evinces an intent on the part of Rotman and Allianex to establish an enduring common venture with TJF–a company that conducts business in Pennsylvania; Rotman engaged in tortious conduct relating to the Agreement that affected TJF in Pennsylvania; and Rotman directed a draft non-circumvention agreement to TJF's agent in Pennsylvania, in furtherance of his partnership negotiations with TJF.

Defendants rely on the following facts in support of their argument that their contacts with Pennsylvania were insufficient to justify the exercise of personal jurisdiction: Rotman never visited Pennsylvania during the course of the negotiations; all of the meetings between the parties occurred outside of Pennsylvania; the majority of Rotman's e-mail messages were addressed

primarily to Ohio resident Musci, while Pennsylvania residents Scardino and Wynne were merely "cc"ed; and the telephone calls placed by Rotman to TJF were placed to a toll-free number that Rotman had no reason to believe was connected to Pennsylvania.

In cases in which personal jurisdiction is contested and interstate contractual obligations are implicated, the Third Circuit has emphasized the importance of the Supreme Court's reasoning in *Burger King*, which held that there is purposeful availment where the defendant has created "continuing obligations" between himself and the residents of the forum." *See Mellon Bank (East) PSFS National Assoc.*, 960 F.2d at 1222 (quoting *Burger King*, 384 F.3d at 475-476). While defendants are correct to assert that the fact that a nonresident has entered into a contract with a resident is not, standing alone, sufficient to justify personal jurisdiction over a defendant, *see id.* at 1223, "the requisite contacts...may be supplied by the terms of the agreement, the place and character of prior negotiations, contemplated future consequences, or the course of dealings between the parties." *Id.*

Considering the constellation of factors surrounding the Agreement at issue in this case, there is ample evidence that Rotman had minimum contacts with Pennsylvania sufficient to justify this court's exercise of specific personal jurisdiction over him and Allianex. Rotman was engaged over the course of a many months in negotiations with Pennsylvanians directed toward his becoming a full and permanent partner in an enterprise operating in Pennsylvania.[4] By negotiating with TJF over an extended period of time by telephone and e-mail, in contemplation of a long-term business relationship, Rotman purposefully availed himself of the privilege of

---

[4] Defendants make much of the fact that TJF was not properly registered to conduct business in Pennsylvania until after this suit was filed. Regardless of whether plaintiff was properly registered, however, it was a going concern in Pennsylvania at the time it brought suit.

conducting business in Pennsylvania. Moreover, had the proposed relationship between TJF and Rotman come to fruition, the effects of the alliance would have been felt in Pennsylvania by Pennsylvanians. *See Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482-83 (3d Cir. 1993) (holding that the exercise of personal jurisdiction over a defendant was proper where the defendant had engaged in "negotiations for an agreement that would have created rights and obligations among citizens of the forum and [that] contemplated significant ties with the forum"). As it happened, the mutual benefits and obligations of a long-term alliance did not come to pass, but the fact that the parties contemplated such benefits and obligations is significant in and of itself. *See Mellon Bank (East) PSFS National Assoc.*, 960 F.2d at 1223.

Defendants argue that the phone calls that Rotman made to TJF should not be counted as purposeful contacts with Pennsylvania, because the calls were made to an 800 number rather than to a number having a Pennsylvania area code. This argument is weak, however, in light of TJF's allegation, which I must accept as true for purposes of deciding this motion, that Rotman had actual knowledge that TJF was located in Blue Bell and that Scardino worked in Blue Bell.[5] The area code Rotman dialed to reach Scardino is immaterial; to the extent that Scardino was on the other end of the line, Rotman knew the calls were being directed into Pennsylvania. The fact that some of the calls were multi-party conference calls that included Musci in Ohio does not alter the analysis.

---

[5] According to Scardino's declaration, Rotman knew that TJF had its principal place of business in Pennsylvania, because Scardino directly told him so. *See* Scardino Declaration at ¶ 10. Scardino avers that he told Rotman when Scardino and Musci first met Rotman at the conference in Chicago that he (Scardino) worked at TJF's office in Blue Bell. *See id.* Rotman has not denied this allegation. Further evidence of Rotman's knowledge that TJF operated in Pennsylvania can be found in the Agreement itself, which expressly identifies TJF's Blue Bell address as the company's principal place of business.

Defendants also argue that the e-mail messages Rotman sent should not be considered purposeful contacts with Pennsylvania, because Scardino and Wynne were only "cc"ed on them, and because the signature file attached to Musci's messages identified an Ohio address for TJF. This argument is also unpersuasive. There was no reason for Rotman to believe that TJF operated in Ohio to the exclusion of Pennsylvania. Notwithstanding his assertion that he was misled by the Ohio address in Musci's signature file, Rotman knew that Ohio was not TJF's principal place of business. Moreover, the fact that Scardino and Wynne were merely "cc"ed on Rotman's e-mail messages does not mean that the messages were not directed into Pennsylvania; it merely means that they were directed into Pennsylvania in addition to being directed elsewhere.

Evidence of Rotman's contacts with Ohio–or any other forum–does not function to offset evidence of his contacts with Pennsylvania. Indeed, a defendant whose business reaches into many fora may find itself subject to personal jurisdiction in many fora. *See First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989). Nor does evidence that Rotman never visited Pennsylvania necessarily disprove that he had sufficient contacts with this forum to warrant his being required to defend suit here. Lack of physical presence in the forum is probative, but not dispositive of a lack of purposeful availment. *See Grand Entertainment Group, Ltd.*, 988 F.2d at 483 ("Due process does not require a defendant's physical presence in the forum before personal jurisdiction is exercised.").

Because TJF has put forward facts establishing defendants' minimum contacts with Pennsylvania, the burden shifts to Rotman and Allianex to show that it would be unreasonable to require them to defend the suit in Pennsylvania. *See Mellon Bank (East) PSFS National Assoc.*, 960 F.2d at 1226. Defendants do not explicitly address the reasonableness prong of the personal

10

jurisdiction analysis in their brief, but they argue, in the context of their motion to transfer, that trying the case in Pennsylvania would be oppressive and inconvenient to them. Defendants argue that their costs of suit would be higher if they were forced to defend in Pennsylvania, as opposed to California. They also argue that trying the case in Pennsylvania would make it difficult for them to obtain necessary testimony from important non-party witnesses.

While defendants' economic considerations are a factor, they are insufficiently consequential to render this court's exercise of personal jurisdiction unconstitutionally unreasonable. *See id.* (requiring the defendant, once minimum contacts have been established, to make "a compelling case" that the assertion of jurisdiction would be so unreasonable as to constitute a due process violation). Inconvenience to the defendant and potential inconvenience to witnesses are also important factors, but they are not sufficient to defeat personal jurisdiction when minimum contacts have been shown to exist between the defendant and the forum state. *See Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 150 (3d Cir. 1992). This is especially true in light of the fact that defendants' allegedly wrongful actions may produce adverse consequences in Pennsylvania affecting TJF, its local customers, and its local employees. These local effects give Pennsylvania an interest in adjudicating the dispute and plaintiff a corresponding interest in having the dispute adjudicated in Pennsylvania. Defendants' argument that Pennsylvania has no interest in adjudicating this dispute is simply not credible. Absent a showing that the exercise of personal jurisdiction over defendants in Pennsylvania would be so unreasonable as to create a due process violation, defendants are not entitled to dismissal pursuant to Rule 12(b)(2).

**C. Venue**

Whereas the plaintiff has the burden of establishing personal jurisdiction, the defendant bears the burden of proving that venue is improper. *Myers v. Am. Dental Assoc.*, 695 F.2d 716, 724-25 (3d Cir. 1982). Because subject matter jurisdiction in this case is based solely on diversity of citizenship, the statute governing venue is 28 U.S.C. § 1391(a):

> (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).

TJF relies on §§ 1391(a)(1) and (a)(2) to establish that venue in the Eastern District of Pennsylvania is proper. It argues that venue lies under 1391(a)(1), because "[v]enue properly lies in a judicial district whose district court may exercise personal jurisdiction over a defendant." It argues that venue lies under § 1391(a)(2), because the Agreement was negotiated by means of e-mail messages and phone calls directed into Pennsylvania.[6] Defendants counter that venue is improper under both provisions—under § 1391(a)(1) because they are not subject to personal

---

[6] In the complaint, plaintiff asserted that venue is proper based on 28 U.S.C. § 1391(a)(2) and § 1391(b). Because the sole basis for subject matter jurisdiction in this case is diversity of citizenship, § 1391(b), on its face, does not apply. Plaintiff's brief in opposition to defendants' motion does not cite § 1391(b); it relies instead on § 1391(a)(1) in addition to § 1391(a)(2).

jurisdiction in Pennsylvania, and under § 1391(a)(2) because the alleged breach of the Agreement (and the alleged tortious conduct resulting therefrom) occurred entirely outside of Pennsylvania–in California.

Although defendants are incorrect in arguing that they are not subject to personal jurisdiction in Pennsylvania, they are correct in arguing that plaintiff's reliance on § 1391(a)(1) to lay venue in this district is misplaced. § 1391(a)(1) is relevant only when a case is brought in a judicial district within a State where all defendants reside. *See* 28 U.S.C. § 1391(a)(1). For purposes of venue, an individual resides where he or she makes his or her residence or permanent home. *Manley v. Engram*, 755 F.2d 1463, 1466 n.3 (11th Cir. 1985). Rotman resides in California, not in Pennsylvania, so § 1391(a)(1) cannot be the basis for laying venue in the Eastern District of Pennsylvania. *See Loeb v. Bank of America*, 254 F. Supp. 2d 581, 586 (E.D. Pa. 2003) (holding that venue is inappropriate in the Eastern District under 1391(a)(1) when not all defendants reside in Pennsylvania); *Druckers', Inc. v. Pioneer Elecs. (USA), Inc.*, No. 93-1931, 1993 U.S. Dist. LEXIS 15003, at *7 (D.N.J. October 30, 1993) (holding that venue in New Jersey is improper under section 1391(a)(1) where defendants share only California as a state of residence).

Plaintiff's reliance on 1391(a)(2) is also misplaced, given defendants' persuasive argument that a substantial part of events giving rise to plaintiff's claim did not occur in Pennsylvania. All of plaintiff's claims—breach of contract, breach of fiduciary duty, misappropriation of trade secrets, and fraud—arise directly and proximately out of wrongful disclosures that are alleged to have occurred in California. Even though the Agreement itself was negotiated by means of e-mails and phone calls purposefully directed into Pennsylvania, those

contacts, which relate exclusively to the formation of the Agreement, are both logistically and conceptually distinct from the circumstances relating to the alleged breach of the Agreement. As the Third Circuit has explained, the language of 1391(a)(2)

> favors the defendant in a venue dispute by requiring that the events or omissions supporting a claim be 'substantial.' Events or omissions that might only have some tangential connection with the dispute in litigation are not enough. Substantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute…The test for determining venue is not the defendant's "contacts" with a particular district, but rather the location of those 'events or omissions giving rise to the claim.'

*Cottman Transmission Sys. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994).

It is thus important to distinguish between the minimum contacts analysis appropriate to questions of personal jurisdiction and the "events or omissions" analysis appropriate to questions of venue under § 1391(a)(2).

In this case, California is not only the location where a *substantial* part of the events giving rise to the claim occurred; it is where *all* such events occurred. Defendants' contacts with Pennsylvania, while "related to" the case for purposes of establishing specific jurisdiction, did not "give rise to" plaintiff's cause of action within the meaning of § 1391(a)(2). Because defendants have carried their burden of showing that venue in this judicial district is improper under both § 1391(a)(1) and (a)(2), their motion to dismiss for improper venue must be granted.

### d. Transfer

Because I have concluded that venue in this judicial district is improper as a matter of law, the transfer provision applicable to this case is 28 U.S.C. § 1406(a). § 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

Transfer under §1406(a) is proper only if it is "in the interest of justice." The Supreme Court has held that transfer in lieu of dismissal is appropriate when dismissal will penalize the plaintiff by subjecting it to "justice-defeating technicalities," such as the impending expiry of a statute of limitations. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962); see also *Sinclair v. Kleindienst*, 711 F.2d 291, 293 (D.C. Cir. 1983) (holding that transfer is in the interest of justice when "refusal to transfer spells the end to the action"). Dismissal is appropriate, however, when there is no threat of a procedural bar to plaintiff's cause of action, when the parties are commercially sophisticated and familiar with the forms of litigation, and when there was nothing obscure about the location of the proper forum for the case. *See Cont'l Ins. Co. v. M/V Orsula*, 354 F.3d 603, 608 (7th Cir. 2003).

Considering the recency of the events underlying plaintiff's claims, this is not a case where dismissal will foreseeably subject plaintiff to the "justice-defeating" penalty of an expired statute of limitations or any other procedural bar. Moreover, the parties—corporate officers and the corporations they control—are commercially sophisticated and familiar with the forms of litigation in which they engage. Finally, there was nothing obscure about the appropriateness of the Central District of California as the venue for this case, given that both defendants reside there, and that the events underlying plaintiff's claims transpired exclusively in California. For

these reasons, I conclude that the interest of justice does not require the transfer of this case.

Accordingly, I will dismiss the complaint without prejudice, pursuant to 28 U.S.C. § 1406(a).

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TJF Associates, LLC | : | |
|    Plaintiff | : | |
| | : | |
| | : | Civil Action |
| v. | : | No. 05-705 |
| | : | |
| | : | |
| Kenneth J. Rotman & Allianex, LLC | : | |
|    Defendants | : | |
| | : | |

**ORDER**

AND NOW, this _____ day of June, 2005, upon consideration of defendants' motion to dismiss, or, in the alternative, to transfer the complaint; plaintiff's brief in opposition to defendants' motion; and defendants' reply brief, it is hereby ORDERED that defendants' motion to dismiss the complaint for improper venue is GRANTED, and the complaint is DISMISSED without prejudice.

 

_____
William H. Yohn, Jr., Judge